1

**CAMPBELL & COOMBS**
1811 South Alma School, Suite 225
2 Mesa, Arizona 85210
Telephone: (480) 839-4828
3 Facsimile: (480) 897-1461

4 Harold E. Campbell
State Bar No. 005160
5 *Attorney for Appellant*

6

# UNITED STATES COURT OF APPEALS

7 ## FOR THE NINTH CIRCUIT

8

| | |
|---|---|
| HENRY J. TAPPER, | No. 12-16569 |
| Plaintiff-Appellant | |
| vs. | D.C. No. 2:11-CV-00088-ROS |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, its assignees and/or successors-in-interest trustee of the Residential Asset Securitization Trust 2007-G, Under the Pooling and Servicing Agreement Dated May 1, 2007 and ONEWEST BANK FSB, a federally chartered savings bank, individually and as successor-in-interest IndyMac Bank FSB, | |
| Defendants-Appellees, | |

19

## APPELLANT'S REPLY BRIEF

20

21

22

23

24

25
Harold E. Campbell
Attorney State Bar #005160
26 **Campbell & Coombs, P.C.**
1811 S. Alma School Rd, Ste 225
27 Mesa, Arizona 85210
*Attorney for Appellant*

28

1

**TABLE OF CONTENTS**

2

**Page**

3

TABLE OF AUTHORITIES................................................................ 3

4

ARGUMENT ................................................................................. 4

5

6

I.      BECAUSE OF APPELLEES SPECIFIC PROMISES TO APPELLANT
        THAT THEY WOULD NOT FORECLOSE UNTIL HIS HAMP

7
        APPLICATION WAS PROCESSED, A.R.S. 33-811[C] DOES NOT
        APPLY TO BAR PLAINTIFF'S

8
        COMPLAINT.................................................................... 4

9

II.     APPELLANT DID SUBMIT A COMPLETE HAMP APPLICATION TO
        APPELLEES, THUS VALIDATING HIS CLAIMS OF PROMISSORY

10

        ESTOPPEL ...................................................................... 5

11

III.    APPELLANT PROPERLY PLEAD THE ELEMENT OF

12
        CONSIDERATION IN HIS BREACH OF THE COVENANT OF
        GOOD FAITH AND FAIR DEALING ................................... 7

13

14

IV.     APPELLANT DID HAVE STANDING TO BRING HIS BREACH OF
        CONTRACT CAUSE OF ACTION FOR VIOLATION OF

15
        SUPPLEMENTAL DIRECTIVE 10-01 IN HIS AMENDED
        COMPLAINT ................................................................... 8

16

17
CONCLUSION............................................................................... 8

18
STATEMENT OF INTERESTED PARTIES ....................................... 10

19
STATEMENT OF RELATED CASES................................................. 11

20
CERTIFICATE OF COMPLIANCE................................................... 12

21
PROOF OF SERVICE ...................................................................... 13

22

23

24

25

26

27

28

1
2

# TABLE OF AUTHORITIES

3
4

## CASES

5
6

*Cook v. Losnegard,* 228 Ariz. 202, 206, ¶ 18, 265 P.3d 384, 388 (App.2011) ... 4, 5

7

*Madison v. Groseth,* 230 Ariz. 8, 279 P.3d 633(Ariz.App. Div. 1,2012)............. 5

8
9

*Marques v. Wells Fargo Home Mortgage, Inc*, 2010 WL 3212131 (S.D.Cal.
10 2010)................................................................................................................ 8

11
12

## STATUTES

13
14

A.R.S. § 33-811....................................................................................... 4, 5

15

A.R.S. § 33-804(D)................................................................................. 5

16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

**ARGUMENT**

4

5

6

7

8

9

**I.**     **BECAUSE OF APPELLEES SPECIFIC PROMISES TO APPELLANT THAT THEY WOULD NOT FORECLOSE UNTIL HIS HAMP APPLICATION WAS PROCESSED, A.R.S. 33-811[C] DOES NOT APPLY TO BAR PLAINTIFF'S COMPLAINT.**

10     Appellees' argument that A.R.S. 33-811[C] is an absolute bar to Appellant's

11  causes of action would lead to an illogical and inequitable result.  Appellant's

12  causes of action are all rooted in promissory estoppel.  As previously alleged in the

13  Second Amended complaint ("SAC") and the Opening Brief, Appellees made

14  numerous verbal and written representations to Appellant stating his home would

15  not be sold during the loan modification evaluation process.   Relying on these

16  misrepresentations, Appellant did not seek injunctive relief in the state court.

17  Under Appellees' position, a beneficiary (like Appellee) or a trustee (who at all

18  times acts at the direction of the beneficiary) could flat out lie to a Trustor that a

19  sale was going to be continued for any number of reasons (settlement negotiations,

20  payment, pending short sale etc.), and be rewarded for lying because the

21  beneficiary would be left without a remedy due to A.R.S.  33-811[C].  This is not

22  the status of the Arizona law nor is it what was held by the Arizona Court of

23  Appeals in *Madison v. Groseth* 230 Ariz. 8, 279 P.3d 633(Ariz.App. Div. 1,2012).

24      In *Madison,* the Arizona Court of Appeals rejected the argument of the pro

25  se Plaintiff that proof of mailing of the notice of trustee's sale to her was needed in

26  order for  A.R.S. 33-811[C] to  apply .  The Court held that such proof was not a

27  requirement for that statute to apply.  However, the Court did hold that under

28

appropriate circumstances A.R.S. 33-811[C] could deprive a trustor of due process stating:

> We recognize that, under other circumstances, § 33–811[C] may apply to deprive a trustor of due process if that trustor is not given sufficient notice of the trustee's sale to obtain an injunction of the sale. *See Cook v. Losnegard,* 228 Ariz. 202, 206, ¶ 18, 265 P.3d 384, 388 (App.2011) (" 'Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.' ") (citation omitted).
> *Madison v. Groseth* 230 Ariz. 8, 12, 279 P.3d 633, 637.

This case is perfect example of the "other circumstances" referred to in *Madison.* Appellant specifically did not apply for any injunctive relief from the state court because of verbal and written representations of Appellees stating his home would **not** be sold during the loan modification evaluation process. To deny Appellant his claims would only encourage and condone the inequitable conduct of lying by a trustor or beneficiary. Because of Appellees' misrepresentations, Appellant cannot be deemed to have been given any notice at all of the sale, and A.R.S. 33-811[C] does not apply to bar the promissory estoppel claims. Since A.R.S. 33-811[C] does not apply, Appellant's A.R.S. 33-804(D) claims are also not barred as a matter of law.

## II. APPELLANT DID SUBMIT A COMPLETE HAMP APPLICATION TO APPELLEES, THUS VALIDATING HIS CLAIMS OF PROMISSORY ESTOPPEL

Appellees submit that there cannot be promissory estoppel on the promise made by Appellees not to foreclose on his home while his HAMP application was pending because Appellant never submitted a complete application to Appellees. Appellees state that although the application and required documents were timely

1  submitted on June 30, 2010 (the required 7 business days before foreclosure),

2  Appellees asked on June for more documents on June 30, 2010: utility bills and

3  proof of car registration.  These documents were not provided until July 2, 2010,

4  which according to Appellees, meant that a complete application was not timely

5  submitted.  This argument fails for 2 reasons.

6      The first reason Appellees' argument fails is because the application

7  submitted by Appellant on June 30, 2010 was complete.  As shown by the explicit

8  language of the HAMP application *(See Excerpts of Records to Reply Brief- Tab*

9  *1)*, utility bills and proof of car registration are not requirements of the HAMP

10  application. As shown in the application, only 4 items are needed for the

11  application: (1) the Request for Modification and Hardship Affidavit Form (2) IRS

12  Form 4506T or 4506T-EZ (3) Supporting income documentation and (4) Most

13  recent two months bank statements.  Although Appellee requested additional

14  documents (utility bills and car registration), these were not required for the initial

15  application to be complete.  Appellant did make a timely and complete application

16  to Appellees.  If Appellees claim these unlisted documents were needed for the

17  initial application, that issue is a question of fact for trial.

18      The second reason Appellees' argument fails is because even if application

19  was not complete, Appellees continued to represent to Appellant that the process

20  was in progress, which, in reliance on, induced Appellant to take no further action

21  to stop the sale. It must be noted that the car registration and three utility bills were

22  faxed to Appellees on July 2, 2010.  On July 5 or 6, 2010, Ms. Watson spoke with

23  John from IndyMac who stated that all of Appellant's  documents were up in

24  imaging, that they were reviewing the package, and that as soon as someone in the

25  Integrity Department changed the occupancy code to owner-occupied the loan

26  modification packet would be assigned to a negotiator.  There was absolutely no

27  mention of the fact that John had found the application somehow incomplete and

28

1  that the sale was going forward.   The promises of no sale pending the pendency of

2  the HAMP process had been both made in written form and verbally, as set forth in

3  Appellant's Opening Brief.  The promissory estoppel claims were  properly plead.

4

5  **III.  APPELLANT PROPERLY PLEAD THE ELEMENT OF**
   **CONSIDERATION IN HIS BREACH OF THE  COVENANT**
6  **OF GOOD FAITH AND FAIR DEALING**

7

8  Appellees argues (without citation)  in paragraph III(B) of their Brief that

9  Appellant's causes of action fail because there was a lack of the consideration

10 required for a contract.  Appellees argue that since Appellant only sought a loan

11 modification, and he was obligated to make payments under the note anyway, there

12 could be no consideration.  As stated in Appellant's Opening Brief, this argument

13 is just wrong.  Appellant, in exchange for falling three months behind (something

14 he was under no legal obligation to do) on payments and submitting the

15 modification paperwork, gets the lender to consider him for a modification which

16 would allow the him to remain in his home at reduced payments over a longer

17 period of time.  The modified loan loses its delinquent status and becomes a

18 performing loan where the bank is again receiving payments.  Additionally, the

19 HAMP program provides financial incentives for lenders who participate in the

20 program, who reduce principal amounts, who help modify second mortgages, etc.

21 Also, by considering borrowers for HAMP modifications, the lenders are able to

22 actively advertise their enrollment in the program to other prospective borrowers

23 who may be in need.  Adding to this, by considering borrowers for modifications,

24 the banks are able to reduce the number of delinquent loans, obtain a larger number

25 of performing loans and write off bad debt, all of which help the balance sheets and

26 shareholder reports each quarter.  The consideration element has been satisfied by

27

28                                                7

1  Appellant.

2

3  **IV.   APPELLANT DID HAVE STANDING TO BRING HIS**
   **BREACH OF CONTRACT CAUSE OF ACTION FOR**
4  **VIOLATION OF SUPPLEMENTAL DIRECTIVE 10-01**
   **IN HIS AMENDED COMPLAINT**

5

6

7       The gist of Appellees argument that Appellant does not have standing  to

8  bring his breach of contract cause of action for violation of Supplemental Directive

9  10-01 is that the logic of *Marques v. Wells Fargo Home Mortgage, Inc*, 2010 WL

10  3212131 (S.D.Cal. 2010) is flawed and must be disregarded.  Appellant submits

11  again that the logic of *Marquez* is correct and should be used by the Court in this

12  case. Appellee cites to other cases that hold contrary to *Marquez*, but these cases

13  should not be followed for the reasons set forth in Appellant's Opening Brief.

14

15                                **CONCLUSION**

16

17       Appellant reiterates that the District Court was in error when it dismissed

18  Appellant's Second Amended Complaint and when it dismissed Appellant's cause

19  of action for breach of contract for violation of Supplemental Directive 10-01 for

20  lack of standing on his Amended Complaint.  Said Orders of the District Court

21  must be reversed and the case remanded to the District Court with instructions to

22  allow Appellant to proceed with his Second Amended Complaint and reinstating

23  his cause of action for breach of contract for violation of Supplemental Directive

24  10-01 for lack of standing on his Amended Complaint.

25

26

27

28                                      8

1

**RESPECTFULLY SUBMITTED** this 3rd day of June, 2013.

2

3

**CAMPBELL & COOMBS, P.C.**

4

By /s/*Harold E. Campbell* (005160)

5

Harold E. Campbell
Attorneys for Appellant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

## CERTIFICATION AS TO INTERESTED PARTIES
## REQUIRED BY FRAP RULE 28-2.1

**CASE No.: AZ-12-16569**          APPELLANT: HENRY J. TAPPER

The undersigned certifies that the following parties have an interest in the outcome of the appeal. These representations are made to enable the Judges of the Court to evaluate possible disqualification or recusal:

Henry J. Tapper- Appellant

Duetsche Bank National Trust Company- Appellee

One West Bank FSB - Appellee

IndyMac Bank FSB - Appellee

**DATED** this 3rd day of June, 2013.

**CAMPBELL & COOMBS, P.C.**

By /s/*Harold E. Campbell* (005160)
Harold E. Campbell
Attorneys for Appellant

1

2
## CERTIFICATE OF RELATED CASES
## REQUIRED BY FRAP RULE 28-2.6
3

4

5    CASE No.: AZ-12-16569                APPELLANT: HENRY J. TAPPER

6

7        The undersigned certifies that the Appellant knows of no cases currently

8    pending that is related to this appeal.

9

10

11        **DATED** this 3rd day of June, 2013.

12

13                                              **CAMPBELL & COOMBS, P.C.**

14                                      By */s/Harold E. Campbell* (005160)
                                            Harold E. Campbell
15                                          Attorneys for Appellant

16

17

18

19

20

21

22

23

24

25

26

27

28                                        11

1

2
## <u>CERTIFICATE OF COMPLIANCE</u>

3

4  CASE No.: AZ-12-16569                    APPELLANT: HENRY J. TAPPER

5
     I certify that this brief complies with the type-volume limitations set forth in
6
Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses a
7
proportional typeface and 14-point font, and contains 2057 words.
8

9
     **DATED** this 3rd day of June, 2013.
10

11                                        **CAMPBELL & COOMBS, P.C.**

12

                                          By <u>*/s/Harold E. Campbell*</u> (005160)
13                                             Harold E. Campbell
                                               Attorneys for Appellant
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    12

1
2
**PROOF OF SERVICE**
3
This is to certify that on this 3rd day of June, 2013, a true and accurate copy
4
of the foregoing Appellant's Opening Brief was electronically filed with the Clerk
5
of the 9th Circuit Court of Appeals using the CM/ECF system. This is to also
6
certify that on this same date a true and accurate copy of the foregoing was sent via
7
first class mail and e-mail to:
8
Ryan S Patterson
**QUARLES & BRADY LLP**
9
Renaissance One
Two North Central Avenue
10
Phoenix, AZ 85004-2391
ryan.patterson@quarles.com
11
12
/s/ Brenda Scott
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
13